[Cite as *State v. Wharton*, 2010-Ohio-4775.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 09CA3132 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| KWAMNE WHARTON, | : | |
| | : | **Released 9/30/10** |
| Defendant-Appellant, | : | |

_____

APPEARANCES:

Jonathan D. Schmidt, BENSON & SCHMIDT, LLP, Chillicothe, OH, for appellant.

Michael M. Ater, ROSS COUNTY PROSECUTOR, and Matthew S. Schmidt, ROSS COUNTY ASSISTANT PROSECUTOR, Chillicothe, OH, for appellee.
_____

Harsha, J.

{¶1}   After arresting Kwamne Wharton for driving without a license, an officer of the Chillicothe Police Department ("CPD") performed an inventory search of Wharton's vehicle to prepare it for impound.  During the search, the officer found a small rock of crack cocaine inside a bag located in the trunk.  Subsequently, officers obtained a search warrant for the impounded vehicle and located over 200 grams of crack cocaine hidden in the passenger compartment.  Based upon these incidents, a jury found Wharton guilty of two counts of possession of cocaine and one count of trafficking in cocaine.

{¶2}   Wharton contends that the trial court erred in handling a Crim.R. 16 discovery violation by the State.  Officer Campbell testified that Wharton told him the drugs and money police seized "[']belonged to someone bigger,['] insinuating that he was working for someone else."  However, Wharton's alleged statement was not

included in the State's written summary of his oral statements to law enforcement. The court excluded the testimony but denied Wharton's motion for a mistrial. Wharton complains that the trial court failed to thoroughly inquire into the circumstances surrounding the discovery violation, specifically as to whether the violation was willful, before selecting a sanction. However, the prosecutor's comments at trial indicate that he did not know of the statement before Campbell testified. Because Wharton did not complain at trial that the violation was willful, and nothing in the record suggests that it was, we fail to see the necessity of further inquiry by the trial court.

{¶3}   Although the court excluded Campbell's testimony, Wharton argues that the court abused its discretion by giving an ineffective curative instruction instead of declaring a mistrial. However, nothing in the record rebuts the presumption that the jury followed the court's instruction to disregard the testimony, particularly in light of the overwhelming evidence establishing Wharton's guilt. Therefore, the trial court's decision to deny his motion for a mistrial was not unreasonable, arbitrary, or unconscionable.

{¶4}   Wharton also contends that the trial court erred in its treatment of inadmissible evidence of his alleged use of crack cocaine. Many of Wharton's complaints go to the admissibility of this evidence, but because the court ultimately excluded it, we fail to see the relevance of these arguments. In addition, Wharton complains that the court did not immediately sustain his objection to this testimony but instead gave the State an opportunity to lay a foundation for its witness' ability to identify crack cocaine. However, if anything, this additional testimony benefited Wharton as the witness testified that he could not visually distinguish crack cocaine from soap.

{¶5}   Wharton also suggests that the court committed plain error by not sua sponte granting a mistrial due to testimony concerning his prior drug use.  However, the court gave the jury a curative instruction to disregard the testimony.  And nothing in the record rebuts the presumption that the jury followed this instruction.  Therefore, the court did not err, let alone plainly err, in not granting a mistrial.

{¶6}   Finally, Wharton argues that the cumulative effect of the trial court's errors in handling inadmissible evidence warrant the reversal of his conviction even if no single error constitutes reversible error.  Because we have found that the trial court did not err in these matters, the cumulative error principle is inapplicable.  Accordingly, we reject Wharton's argument and affirm the trial court's judgment.

## I.  Facts

{¶7}   The Ross County grand jury indicted Wharton on two counts of possession of cocaine and one count of trafficking in cocaine.  Wharton pleaded not guilty to the charges, and the matter proceeded to a jury trial.  Although several witnesses testified at trial, only an abbreviated summary of the evidence is necessary at this point.

{¶8}   Officer Charles Campbell of the CPD testified that as he was patrolling an area known for high drug activity, he observed someone enter the passenger side of a vehicle that was stopped in a no parking zone.  The vehicle began to move, and after the driver made two turns without signaling, Campbell initiated a traffic stop.  He arrested Wharton, the driver and owner of the vehicle, for driving without a license.  And because the passenger, James Williams, did not have a driver's license, Campbell testified that he had to perform an inventory search and impound the vehicle.

{¶9}  Campbell testified that he searched the passenger compartment, the glove box, and the trunk of the vehicle, but generally during inventory searches he does not dismantle actual parts of the car.  He found a plastic grocery bag, some clothing, and a box of sandwich baggies in the trunk.  Wharton told Campbell the clothing belonged to him.  When Campbell opened the grocery bag, he found more sandwich baggies, a set of digital scales, razor blades, and a small white rock wrapped in what looked like a piece of a sandwich baggie.  The Bureau of Criminal Identification and Investigation ("BCI") later confirmed the rock contained crack cocaine and weighed .268 grams.  Campbell also found a box of rubber gloves beneath the grocery bag.  Campbell testified that Williams denied owning anything in the vehicle and said that he had "just caught a ride" and "didn't know anything about it."  Campbell contacted Fred Rice Towing, a private company, to impound the vehicle.  He did not follow the vehicle to the impound lot.

{¶10}  Detective Derek Wallace of the CPD testified that he was assigned to the U.S. 23 Pipeline Task Force.  After Campbell's encounter with Wharton, the task force received two anonymous tips about drugs in Wharton's vehicle.  On March 31, 2009, Wallace retrieved the vehicle from the impound lot and brought it to the task force's office.  Wallace testified that to his knowledge, the vehicle sat at Fred Rice Towing from the time Campbell had it towed until he retrieved it and that no one had entered it after the inventory search.  Wallace testified that he thought the impound lot had a large, wooden fence around it and security cameras, but he did not review any of the security footage.

{¶11}  A "drug dog" sniffed the exterior of the vehicle and gave a positive

indication that the vehicle contained drugs.  After obtaining a search warrant, Wallace and other officers thoroughly examined the vehicle.  Wallace explained that the vehicle had a large center console between the driver's seat and the passenger's seat.  Behind a piece of carpeting he removed from the passenger side of this console, he found three, "[s]oftball size" baggies that contained an off-white rock substance.  Wallace testified that the carpet removal did not require any tools but did require "a little bit of force."  The carpet snapped into the console with some type of "plastic pop in screws."  BCI later determined that these baggies contained over 200 grams of crack cocaine.

{¶12}  Wharton had apparently been released at some point prior to Wallace's search.  So Campbell contacted Wharton and told him that he could pick up his vehicle.  But when Wharton arrived, Campbell arrested him and he found over $3,000 in cash on Wharton's person.  Wharton denied ownership of the money and the drugs in his vehicle.

{¶13}  Mary Cicco, a forensic scientist at the Miami Valley Regional Crime Laboratory, testified that she compared Wharton's DNA to "touch DNA" taken from the outside of the three baggies Wallace found in the vehicle.  She testified that touch DNA is "the sloughing of skin cells that are left on a surface, clothing, items like that."  She explained "[i]f I'm touching papers a lot, baggies, you know, any sort of item that I'm touching, car door handles, steering wheels, because you're touching them and you are constantly sloughing cells, you are leaving your DNA there and you can get DNA profiles from that evidence."

{¶14}  Cicco testified that each bag had a "mixed DNA profile," meaning "more than one individual held that baggie in their hand and put their DNA cells on that."

Therefore, she could not say the DNA on the baggies was a "match" for Wharton. But because Wharton's DNA alleles were exhibited "all the way across the mixed DNA profile[,]" he could not "be excluded as a contributor to this profile." Cicco testified that she could calculate the likelihood that an individual unrelated to Wharton would have "the same alleles that are found in the mixed profile in relation to Mr. Wharton * * *." For instance Cicco's reports shows that for the first baggie, the probability of an unrelated individual contributing to the DNA profile she found is 1 in 55,680,000 African Americans; 1 in 25,950,000 Caucasians; and 1 in 23,580,000 Southwestern Hispanics.

{¶15} The jury found Wharton guilty of: 1.) possession of cocaine, a fifth degree felony; 2.) trafficking in cocaine, a first degree felony; and 3.) possession of cocaine, a first degree felony. After sentencing, Wharton filed this appeal.

## II. Assignments of Error

{¶16} Wharton assigns the following errors for our review:

I.      The trial court erred in failing to inquire into the circumstances producing the Criminal Rule 16 violation by the State, and further, the State's violation of Criminal Rule 16 constituted reversible error.

II.     The trial court erred in permitting inadmissible character evidence to be heard by the jury, and further, the State erred in failing to lay the required foundation.

III.    The trial court erred on two occasions by issuing instructions to the jury in an attempt to cure the inadmissible evidence already heard by the jury.

IV.     The cumulative error deprived Mr. Wharton of a fair trial.

## III. Discovery Violation

{¶17} In his first assignment of error and in part of his third assignment of error, Wharton challenges the manner in which the trial court handled a Crim.R. 16 discovery

violation by the State.  If a party fails to comply with the requirements of this rule, the trial court may "grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or * * * make such other order as it deems just under the circumstances."  Former Crim.R. 16(E)(3)[1].  An appellate court "will not disturb the trial court's choice of remedy absent an abuse of discretion."  *State v. Jenkins* (Sept. 6, 2000), Pickaway App. No. 98CA31, 2000 WL 1281211, at *4, citing *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 26, 514 N.E.2d 394.  The term "abuse of discretion" implies that the court's attitude is unreasonable, unconscionable, or arbitrary.  *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

{¶18}  Here, Wharton filed a written demand for Crim.R. 16 discovery, and the State supplied him with a written summary of oral statements Wharton allegedly made to Campbell.  The summary indicated that after Wharton's second arrest he "denied any knowledge of the drugs[,] eventually stating the drugs were not his."  After Campbell found over $3,000 in cash on his person, Wharton was "unable to explain or prove how he obtained the cash" and advised Campbell that "neither the drugs found in the vehicle or the cash found on his person belonged to him."

{¶19}  Then, during the State's presentation of its case-in-chief, this exchange with Campbell occurred:

| [PROSECUTOR]: | And what was [Wharton's] explanation for how he got those funds[, i.e. over $3,000 in cash]? |
|---|---|
| OFFICER CAMPBELL: | After telling me he had no explanation for it, continued questioning him about it, he told me that the money nor the drugs found in the car belonged to him that it ["]belonged to someone bigger,["] insinuating that he was working for |

---

[1] This version of Crim.R. 16(E)(3) was in effect when Wharton's case was before the trial court.  Crim.R. 16 was amended effective July 1, 2010.  The quoted language now appears in Crim.R. 16(L)(1).

someone else.

**{¶20}** Wharton objected to Campbell's testimony that Wharton said the drugs and money "[']belonged to someone bigger,['] insinuating that he was working for someone else" because that statement was not disclosed in the State's written summary. Wharton also moved for a mistrial. The State conceded that it violated the discovery rules by not providing this information and agreed that the testimony should be excluded. See former Crim.R. 16(A); former Crim.R. 16(B)(1)(a)(ii); *State v. Jackson*, Lucas App. No. L-07-1184, 2008-Ohio-1563, at ¶34, quoting *State v. Lopez*, Lucas App. No. L-06-1243, 2007-Ohio-5473, at ¶17 (noting that "it is well-settled that the state cannot avoid its duty pursuant to Crim.R. 16(B)(1)(a)(ii) by simply 'failing to make a record of the statement'").[2] However, the State felt a curative instruction could remedy the situation. The court denied the motion for a mistrial, excluded the objectionable testimony, and gave the jury the following instruction:

> Ladies and gentlemen, thank you for your patience. If you will recall, defense counsel * * * had made an objection, this Court has sustained his objection. You may consider Officer Campbell's testimony that the defendant denied ownership of the drugs and money. You may not consider for any reason any additional testimony by Officer Campbell after that. You are to draw no inference from the Court's striking this from the record and you may not consider it for any purpose whatsoever.

**{¶21}** Initially, Wharton contends that the court failed to conduct a thorough inquiry of the circumstances surrounding the Crim.R. 16 violation before it selected a sanction. Generally a trial court must inquire into the circumstances producing a discovery violation to determine what kind of sanction to impose. *State v. Lewis*, Scioto App. No. 07CA3137, 2008-Ohio-1395, at ¶18 (per curiam), citing *Lakewood v.*

---

[2] As already noted, Crim.R. 16 was amended effective July 1, 2010. *Jackson* and *Lopez* interpreted former Crim.R. 16(B)(1)(a)(ii).

*Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, at paragraph two of the syllabus.

Wharton complains that the court did not inquire into the willfulness of the discovery

violation by asking the State or Campbell "<u>how</u> or <u>why</u> it came to be that the [sic] Mr.

Wharton's statement was omitted from the report, <u>who</u> else, if anyone, knew about the

statement besides the testifying officer, <u>if</u> the State had actual prior knowledge about

the statement and <u>when</u> that knowledge was obtained."

{¶22}  Although the trial court did not ask these precise questions, the

prosecutor's comments during the bench conference clearly imply the prosecutor had

no knowledge of the alleged statement before Campbell testified.  The prosecutor

stated:

> I understand the State's discovery requirements.  There was an incident
> report given to the defense, the Chillicothe Police Report that the Court
> was aware of.  It was stated in that that the defendant had not been able
> to provide an explanation about that and they advised that neither the
> drugs found on the vehicle, or in the vehicle, or the cash found on his
> person belonged to him.  *What happened here was the officer went*
> *beyond that and primarily made a conjecture or drew an implication from*
> *what the defendant's comments were. * * *  It's not uncommon for a*
> *witness to improperly conjecture or imply about what somebody else was*
> *thinking or stating and that some things certainly that's objectionable* and
> can be cured by the objection in any instruction this Court gives.

(Emphasis added).  Moreover, Wharton never argued at trial that the discovery violation

was willful, and nothing in the record indicates that it was.  And contrary to his argument

on appeal, the mere fact that the knowledge of a law enforcement officer is imputed to

the State does not mean the violation was willful.  See *State v. Wiles* (1991), 59 Ohio

St.3d 71, 78-79, 571 N.E.2d 97 (per curiam).  Therefore, we fail to see why the trial

court needed to make the additional, specific inquiries Wharton now seeks.

{¶23}  Wharton also claims that even if the trial court sufficiently inquired into the

circumstances surrounding the discovery violation, the court abused its discretion in denying his motion for a mistrial because a curative instruction could not overcome the prejudicial impact of Campbell's testimony. He cites *State v. Moore* (1988), 40 Ohio St.3d 63, 66, 531 N.E.2d 691, for the proposition that: "The state's failure to provide discovery will not amount to reversible error unless there is a showing that the prosecution's failure to disclose was a wilful violation of Crim.R. 16, that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or that the accused was prejudiced by admission of the statement." And Wharton argues that a mistrial was warranted based on any one of these three reasons.

**{¶24}** However, we believe this test is more appropriately applied to matters such as evaluating whether the trial court abused its discretion in admitting evidence the State failed to properly disclose under Crim.R. 16 – not to determine whether the court abused its discretion by excluding the evidence and giving a curative instruction rather than ordering a mistrial. See *State v. Scudder*, 71 Ohio St.3d 263, 269, 1994-Ohio-298, 643 N.E.2d 524 ("We have held that where a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefited the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced. *The same tripartite test applies for determining whether a trial court has abused its discretion in admitting other evidence that was not properly disclosed under Crim.R. 16.*" (Emphasis added) (internal citations omitted)); *Wiles* at 79; *State v. Stevens*, Highland App. No. 09CA3, 2009-Ohio-

6143, at ¶12.[3]  We believe the general rules for appellate review of a trial court's decision on a motion for a mistrial apply under these circumstances.

**{¶25}**  The decision to grant or deny a motion for a mistrial rests within the sound discretion of the trial court.  *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343.  "In a criminal proceeding, the trial court should not order a mistrial merely because of some intervening error or irregularity unless the substantial rights of the accused are adversely affected."  *State v. Thompson*, Ross App. No. 08CA3032, 2009-Ohio-1115, at ¶8, citing *State v. Nichols* (1993), 85 Ohio App.3d 65, 69, 619 N.E.2d 80.  This determination is also within the sound discretion of the trial court.  Id.  Again, the term "abuse of discretion" implies that the court's attitude is unreasonable, unconscionable, or arbitrary.  *Adams*, supra, at 157.

**{¶26}**  When analyzing the propriety of a mistrial, we presume that the jury will follow the court's curative instructions concerning improper witness comments.  *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, at ¶93; *State v. Herring*, 94 Ohio St.3d 246, 254, 2002-Ohio-796, 762 N.E.2d 940.  However, we recognize that "occasionally curative instructions may not sufficiently eliminate the prejudicial impact of highly inflammatory evidence."  *State v. Martin*, Pickaway App. No. 04CA24, 2005-Ohio-1732, at ¶46; see *State v. Davis* (1975), 44 Ohio App.2d 335, 345, 338 N.E.2d 793.  "A party can rebut the presumption that curative instructions remedy a mistake by showing that the jury could not have ignored the evidence and that serious prejudice likely occurred."  *Martin* at ¶46; See *Greer v. Miller* (1987), 483 U.S. 756, 766, fn. 8, 107 S.Ct.

---

[3] In *Stevens* at ¶12, fn. 1 we also noted inconsistency in the phrasing of the tripartite test as conjunctive or disjunctive, even within the decisions of the Supreme Court of Ohio, and found that in an "abundance of caution," we would "apply the stricter, disjunctive standard, which requires the presence of only one of the factors in order to find reversible error."

3102, 97 L.Ed.2d 618 (noting that courts generally presume that a jury follows instructions to disregard evidence unless there is an "overwhelming probability" that the jury will be unable to follow the instruction and a strong likelihood that the evidence would be "devastating" to the defendant); *Bruton v. United States* (1968), 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (stating that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored").

**{¶27}** Wharton contends that the court's curative instruction was insufficient to cure the prejudicial impact of Campbell's testimony. Undoubtedly the stricken testimony was potentially damaging, as Wharton's alleged statement could be taken to imply that he knew the drugs were in his vehicle and that he worked for a higher level drug dealer. However, we have found nothing in the record to suggest that the jury failed to follow the court's admonishment to ignore Campbell's isolated comment or that serious prejudice likely occurred because of it.

**{¶28}** Contrary to Wharton's assertion, overwhelming evidence established his guilt. See *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, at ¶175. For the possession the charges, the State had to present evidence that Wharton knowingly obtained, possessed, or used a controlled substance, i.e. the crack cocaine in the trunk and in the passenger compartment. R.C. 2925.11. As we explained in *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, at ¶13:

> Possession may be actual or constructive. Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an

item, even if the individual does not have the item within his immediate physical possession. For constructive possession to exist, it must also be shown that the person was conscious of the presence of the object. Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.

(Citations, quotations, and brackets omitted).

**{¶29}** At the time of the traffic stop, Campbell observed Wharton in an area known for high drug activity. Wharton owned and was driving the vehicle the drugs were found in at the time of the stop. And in the automobile context a defendant's "possession of the keys to the automobile is a strong indication of control over the automobile and all things found in or upon the automobile." *State v. Fry*, Jackson App. No. 03CA26, 2004-Ohio-5747, at ¶41. Williams, the only other occupant of the vehicle, denied owning anything in it. However, Wharton admitted that he owned clothing in the trunk that sat next to the bag containing the first stash of crack cocaine. The second stash was located in the center console. Wallace only needed to use "a little bit of force" to remove the carpeting on the console to reveal the drugs. And from photographs of the vehicle's interior, this area of the console looks to be within a driver's, i.e. Wharton's, reach. And "when one is the driver of a car in which drugs are within easy access of the driver, constructive possession may be established." Id.

**{¶30}** Moreover, Cicco's testimony on touch DNA bolsters a finding that Wharton actually possessed the drugs in the console. Cicco could not exclude Wharton as a contributor to the mixed DNA profile she found on each of the three baggies in the console. For one of the baggies, she found that the probability of an individual unrelated to Wharton contributing to the DNA profile she found was 1 in 55,680,000

African Americans; 1 in 25,950,000 Caucasians; and 1 in 23,580,000 Southwestern Hispanics. Wharton argues that this DNA evidence does not prove he "actually <u>ever</u> touched the bags in question." He contends that because he owned the vehicle, it is "axiomatic" that his DNA would be in it and the "bags mere presence in the vehicle could account for [his] DNA being found on them." However, Cicco did not testify about the likelihood of DNA transferring from one surface, such as the interior of a vehicle, to another, such as a plastic bag. And we question the likelihood of Wharton's skin cells appearing behind a piece of carpeting on the console and then transferring to all three baggies of crack cocaine.

{¶31} In his brief, Wharton insinuates that because the second stash was found on the passenger side of the center console, Williams may have put the drugs there after entering the vehicle. However, "two or more persons may have joint constructive possession of the same object." *State v. Brown*, Athens App. 09CA3, 2009-Ohio-5390, at ¶19. And we find it unlikely that Williams could peel back the carpeting on the center console and hide three "[s]oftball size" bags full of crack cocaine behind it without Wharton's knowledge.

{¶32} Wharton implies that someone might have planted the crack cocaine in the center console after Campbell had the vehicle impounded. He points to a "startling lack of evidence regarding the chain of custody" from the time Campbell had the vehicle impounded until Wallace retrieved it. He argues that: 1.) "[t]here was no physical or testimonial evidence regarding the whereabouts of the vehicle during that time"; 2.) "[t]here was no evidence regarding who may have had access to the vehicle during that time"; and 3.) "[t]his was not a police impound lot, but a lot run by an independent,

private company."

{¶33} "Although the state bears the burden of establishing a proper chain of custody, that duty is not absolute; the state need only establish that it is reasonably certain that substitutions, alteration or tampering did not occur." *State v. Hatfield* (Apr. 19, 1990), Athens App. No. 1413, 1990 WL 54884, at *8, citing *State v. Blevins* (1987), 36 Ohio App. 3d 147, 521 N.E.2d 1105; and *State v. Moore* (1973), 47 Ohio App. 2d 181, 353 N.E.2d 866. Breaks in the chain of custody go to the weight of the evidence, not its admissibility. *Blevins* at 150. Wallace testified that to his knowledge, the vehicle sat at Fred Rice Towing from the time Campbell had it towed until he retrieved it and no one had entered it since the inventory search. Wharton points to no evidence that suggests otherwise. The mere fact that a private company ran the impound lot or that Wallace did not review video footage from the lot does not imply lax security or that evidence was in fact planted in this case. And we again note that Cicco could not exclude Wharton as a contributor to the mixed DNA profile she found on each of the three baggies in the console.

{¶34} For the trafficking charge, the State had to show that Wharton knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed crack cocaine when he knew or had reasonable cause to believe that the drug was intended for sale or resale by him or another person. R.C. 2925.03. Law enforcement found three baggies in the console, which in total contained over 200 grams of crack cocaine. The baggies held over 300 small, knotted packets of the drug. The amount of the drug and the individual packaging suggest trafficking, as opposed to personal use, as does the presence of a set of digital scales in the trunk. Moreover,

when Campbell arrested Wharton, he had large quantities of cash on his person, i.e. over $3,000.

**{¶35}** Given this evidence, we cannot say that an "overwhelming probability" exists that the jury was unable to follow the court's curative instruction or that a strong likelihood exists that Campbell's testimony was "devastating" to Wharton. And because Wharton has not overcome the presumption that the jury followed the trial court's instruction, we find that the court did not abuse its discretion in denying his motion for a mistrial.

**{¶36}** Finally, in his appellate brief Wharton cited Evid.R. 104(C), which provides that "[h]earings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury[,]" without further comment. In his reply brief, Wharton states that "because there was no separate prior hearing on *whether* [his alleged statement to Campbell] should be admitted into evidence, Mr. Wharton was denied his due procedural and substantive due process rights and his right to a fair trial." Aside from the fact that an appellant cannot raise a new argument in a reply brief, *American Fiber Systems, Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, at ¶21, we fail to see how the court could have held, or the prosecutor could have sought, a hearing on the admissibility of a statement neither had actual knowledge of until Campbell testified before the jury. Accordingly, we overrule Wharton's first assignment of error, and we overrule his third assignment of error to the extent he argues that the court's curative instruction could not overcome the prejudicial impact of Campbell's excluded testimony.

IV.  Evidence of Defendant's Prior Drug Use

**{¶37}** In his second assignment of error and in part of his third assignment of error, Wharton makes several complaints about the manner in which the trial court handled evidence of his alleged prior drug use. Charles Bartram, a witness for the State, testified that he "believe[d]" Wharton was an individual who stayed at his house for approximately two weeks in March 2009. Bartram testified:

> [PROSECUTOR]: With regard to the house guest that you had * * * that you believed to be this person in the courtroom today, what did you see him doing while he was at your house?
>
> MR. BARTRAM: Well, he was doing drugs.
>
> [PROSECUTOR]: What kind of drugs are we talking about?
>
> MR. BARTRAM: Crack cocaine I think.

**{¶38}** Wharton objected to this testimony, arguing that it constituted inadmissible character evidence. The State claimed that the testimony was admissible under Evid.R. 404(B) to show motive, opportunity, intent, and knowledge. The court found that the State needed to lay a foundation to show Bartram could actually identify crack cocaine, which the State assured the court it would do. Then the court overruled Wharton's objection, finding that the testimony was admissible "to prove identity and purpose and knowledge." Defense counsel noted a continuing objection to Bartram's testimony.

**{¶39}** The State then made several attempts to show that Bartram could identify crack cocaine, but Bartram testified that he could not identify the drug "without testing it with a test kit" and that if he "saw crack cocaine here and soap here, right in front of me I wouldn't know the difference to look at it." At a bench conference, the prosecutor then told the court, "I'm not going to ask him anymore questions. He's clearly recanting what he told us earlier." The court then sustained defense counsel's continuing objection to

Bartram's testimony and told the jury: "Ladies and gentlemen of the jury you are to disregard the testimony of this witness concerning anything that he stated he saw the defendant do in his presence. You are to not only disregard it, it's not evidence, and you can't infer anything from it nor speculate upon it." Wharton did not object to the court's decision to give this instruction nor did he seek a mistrial based on Bartram's testimony.

{¶40} Initially Wharton complains that: 1.) the State failed to adequately explain how testimony about his alleged drug use was admissible under Evid.R. 404(B); 2.) the State failed to lay the foundation for Bartram's ability to identify crack cocaine; 3.) the probative value of Bartram's testimony, "if any, [was] substantially outweighed by the prejudice to Mr. Wharton, confusion of the issues, and misleading the jury," i.e. Wharton makes an Evid.R. 403(A) argument. Even though we tend to agree with these arguments, they go to the admissibility of evidence, and the court clearly sustained Wharton's objection to Bartram's testimony about his alleged drug use. Therefore, we do not address the issue of admissibility.

{¶41} Wharton also complains that the court did not immediately sustain his objection to Bartram's testimony. He objects to the fact that the jury heard Bartram testify about his ability to identify crack cocaine and contends that the court should have conducted a hearing outside the presence of the jury "to determine the extent of the proposed testimony before allowing the jury to hear it." However, Wharton did not file a motion in limine or request such a hearing. And if anything, Bartram's additional testimony benefited Wharton. In testifying that he could not identify crack cocaine without a test kit and that he could not visually distinguish crack cocaine from soap,

Bartram essentially recanted his previous testimony that he observed someone he only "believe[d]" to be Wharton using crack cocaine.

**{¶42}** Finally, Wharton contends that the court's curative instruction could not overcome the prejudicial impact of Bartram's testimony, i.e., it was impossible to "unring the bell." Wharton's argument implies that the court should have sua sponte granted a mistrial. "A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when the ends of public justice would otherwise be defeated." *State v. Johnson*, Franklin App. No. 08AP-652, 2009-Ohio-3383, at ¶30, citing *Cleveland v. Walters* (1994), 98 Ohio App.3d 165, 168, 648 N.E.2d 37. "The failure to grant a mistrial sua sponte is judged under a plain error standard." Id. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "A silent defendant has the burden to satisfy the plain-error rule[,] and a reviewing court may consult the whole record when considering the effect of any error on substantial rights." *State v. Davis*, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶22, citing *United States v. Vonn* (2002), 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90.

**{¶43}** For a reviewing court to find plain error: (1) there must be an error, i.e., "a deviation from a legal rule"; (2) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings"; and (3) the error must have affected "substantial rights," i.e., it "must have affected the outcome of the trial." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Furthermore, the Supreme Court of Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of

justice."  Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at

paragraph three of the syllabus.

**{¶44}**  As already noted, when analyzing the propriety of a mistrial, we presume

that the jury will follow the court's curative instructions concerning improper witness

comments.  *Ahmed*, supra, at ¶93; *Herring*, supra, at 254.  However, we again

recognize that "occasionally curative instructions may not sufficiently eliminate the

prejudicial impact of highly inflammatory evidence."  *Martin*, supra, at ¶46.  "A party can

rebut the presumption that curative instructions remedy a mistake by showing that the

jury could not have ignored the evidence and that serious prejudice likely occurred."  Id.;

see *Greer*, supra, at 766, fn. 8; *Bruton*, supra, at 135.

**{¶45}**  Here, we have found nothing in the record to suggest that the jury failed to

ignore Bartram's testimony or that serious prejudice likely occurred because of it.  In

Section III of this decision, we outlined the overwhelming evidence of Wharton's guilt.

Moreover, as we noted above, before the court gave the curative instruction Bartram

had already essentially recanted his own testimony.  Therefore, the trial court did not

err, let alone commit plain error, in excluding the testimony and giving a curative

instruction rather than sua sponte declaring a mistrial.  Accordingly, we overrule

Wharton's second assignment of error, and we overrule his third assignment of error to

the extent he challenges the effectiveness of the curative instruction.

V.  Cumulative Error

**{¶46}**   In his fourth assignment of error, Wharton contends that the cumulative

effect of the trial court's errors deprived him of a fair trial.  "Before we consider whether

'cumulative errors' are present, we must first find that the trial court committed multiple

errors." *State v. Harrington*, Scioto App. No. 05CA3038, 2006-Ohio-4388, at ¶57, citing

*State v. Goff*, 82 Ohio St.3d 123, 140, 1998-Ohio-369, 694 N.E.2d 916.  Because we

have found that the trial court did not err in handling the inadmissible testimony of

Campbell and Bartram, the cumulative error principle is inapplicable.  Accordingly, we

overrule Wharton's fourth assignment of error.

VI.  Conclusion

**{¶47}**  Having overruled each of the assignments of error, we affirm the trial

court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**