[Cite as *State v. Wilson*, 2015-Ohio-4979.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102231**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DANTOINE WILSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585444-A

**BEFORE:** Celebrezze, A.J., Keough, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** December 3, 2015

**ATTORNEY FOR APPELLANT**

David L. Doughten
David L. Doughten Co., L.P.A.
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Ryan J. Bokoch
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., A.J.:

{¶1}    Defendant-appellant, Dantoine Wilson ("Wilson"), brings this appeal challenging his convictions for drug trafficking and drug possession. Specifically, Wilson argues that: (1) the evidence was insufficient to support his convictions, and (2) his convictions are against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The Cuyahoga County Grand Jury returned a multiple count indictment charging Wilson with: (1) trafficking in drugs — crack cocaine — R.C. 2925.03(A)(2), (2) drug possession — crack cocaine — R.C. 2925.11(A), (3) trafficking in drugs — heroin— R.C. 2925.03(A)(2), (4) drug possession — heroin — R.C. 2925.11(A), and (5) tampering with evidence, R.C. 2921.12(A)(1). Wilson pled not guilty to the indictment.

{¶3} Wilson waived his right to a jury trial and proceeded to be tried before the court. Detectives Duane Funk and Brent Lavinder of the Middleburg Heights Police Department testified during the bench trial. Furthermore, Samuel Troyer, a Bureau of Criminal Investigation ("BCI") DNA specialist, provided expert testimony on behalf of the state of Ohio. The trial court overruled the defense's motions for acquittal — both at the close of the state's case and after the defense rested.

**{¶4}** The trial court convicted Wilson of Counts 1, 2, 3, and 4, and found Wilson not guilty of Count 5. After merging Counts 1 and 2 and Counts 3 and 4, the trial court sentenced Wilson to 24 months in prison: 12 months for Count 1 and 24 months for Count 3. The trial court ordered the sentences to run concurrently. Furthermore, the trial court ordered Wilson to serve 3 years of postrelease control.

**{¶5}** Wilson filed the instant appeal assigning two errors for review:

I. The evidence is insufficient to sustain convictions of drug trafficking and drug possession of R.C. 2925.03 and R.C. 2925.11.

II. The verdicts of drug possession and drug trafficking are against the manifest weight of the evidence.

## II. Law and Analysis

### A. Sufficiency

**{¶6}** Wilson first argues his drug trafficking and drug possession convictions are not supported by sufficient evidence. Specifically, Wilson argues that the DNA evidence found on a plastic bag containing crack cocaine only establishes that he was in the hotel room, and is insufficient to sustain the convictions.

**{¶7}** The state has the burden of proving each element of a charged offense. A claim that a conviction is unsupported by sufficient evidence tests whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). This court must determine "'whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25.

### 1. Possession

{¶8} Wilson argues that the state failed to prove the elements of possession beyond a reasonable doubt. Specifically, Wilson argues that there is no evidence that he ever had control over the drugs recovered from the hotel room. In support of his argument, Wilson claims that: (1) he did not rent the hotel room, (2) he had no drugs, paraphernalia, or money in his possession when the police searched him, and (3) at least five other occupants had been present in the hotel room, and many, if not all, of the other occupants had a "history of drug involvement."

{¶9} R.C. 2925.11 defines possession of drugs: "no person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶10} Possession can be actual or constructive. *State v. Brown*, 8th Dist. Cuyahoga No. 87932, 2007-Ohio-527, ¶ 7. Actual possession entails ownership or physical control, whereas constructive possession is defined as knowingly exercising

dominion and control over an object, even though that object may not be within one's immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). The state may show constructive possession — that is dominion and control — of drugs solely by circumstantial evidence. *State v. Trembly*, 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist.2000).

{¶11} In *State v. Robinson*, this court explained:

Although the mere presence of a person at the residence in which contraband is discovered is not enough to support the element of possession, if the evidence demonstrates defendant was able to exercise dominion or control over the illegal objects, defendant can be convicted of possession. *State v. Wolery* (1976), 46 Ohio St.2d 316, 348 N.E.2d 351; *State v. Haynes* (1971), 25 Ohio St.2d 264, 267 N.E.2d 787. Moreover, where a sizable amount of readily usable drugs is in close proximity to a defendant, this constitutes circumstantial evidence to support the conclusion that the defendant was in constructive possession of the drugs. *State v. Benson* (Dec. 24, 1992), 8th Dist. No. 61545, 1992 Ohio App. LEXIS 6503; *State v. Pruitt*, 18 Ohio App.3d 50, 480 N.E.2d 499 (8th Dist.1984).

*State v. Robinson*, 8th Dist. Cuyahoga No. 90731, 2008-Ohio-5580, ¶ 86. Furthermore, the Ohio Supreme Court has held that " knowledge of illegal goods on one's property is sufficient to show constructive possession," as long as the person "is conscious of the

presence of the object." *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 11, citing *Hankerson*.

{¶12} In the instant matter, the drugs were recovered from the hotel room's ceiling light — they were not found on Wilson's person. Therefore, the state must demonstrate that Wilson constructively possessed the drugs found in the plastic bags. In support of its case, the state presented the testimony of: (1) Detective Duane Funk, (2) Detective Brent Lavinder, and (3) BCI specialist Samuel Troyer.

{¶13} First, Detective Funk testified that he received a call from a Red Roof Inn front desk clerk regarding heavy foot traffic in and out of room 211. Detective Funk testified that the hotel is located in a "high drug area." The female guest who rented the hotel room and a male guest approached the responding police officers in the hotel parking lot. The officers searched the male and female guests and recovered heroin needles from both of them. The female hotel guest told the responding officers that the hotel room was now vacant and granted them permission to enter the room. Detective Funk testified that police were unable to enter the hotel room because the door had been bolted from the inside. The officers ordered the occupants inside the room to open the door. Initially, the occupants did not comply with the officers' order. Detective Funk testified that "a little over a minute" elapsed before the occupants complied and opened the door. Furthermore, Detective Funk testified that during this period of time, he heard multiple people in the bathroom and heard the toilet being flushed. After entering and

securing the room, police found four males — including Wilson — inside. The officers searched the room and the occupants and found: (1) a syringe inside the toilet tank, and (2) a small scale in one of the dresser drawers. The officers cleared the occupants from the room and had hotel staff lock down the room.

{¶14} The following day, officers returned to the hotel room after receiving an anonymous tip advising police to search the hotel room's ceiling light. Detective Funk testified that the ceiling light had not been searched the previous day. Detectives Funk and Lavinder checked the ceiling light and discovered three plastic bags, all packaged together, including: (1) an exterior plastic bag containing two smaller plastic bags, (2) an interior bag containing 2.27 grams of crack cocaine, and (3) an interior bag containing 9.24 grams of heroin. Based on his training and experience, Detective Funk testified that the quantity of crack cocaine and heroin recovered is consistent with drug trafficking, rather than personal use.

{¶15} Officers were unable to find any useful fingerprints on the plastic bags. The officers sent the plastic bags to the BCI for DNA analysis. The BCI discovered Wilson's DNA on the plastic bags. As a result, Detective Funk conducted a "confirmation sample" by taking two buccal swabs from Wilson's mouth and submitting the swabs to the BCI for comparison.

{¶16} Second, Detective Lavinder testified that he assisted in the search of the hotel room, pursuant to the anonymous tip. Detective Lavinder testified that when the

police came back to the hotel after receiving the anonymous tip, the room remained "locked down" by the hotel staff. Furthermore, Detective Lavinder testified that all of the occupants of the hotel room, including Wilson, had local addresses — implying that none of the occupants were from out of town and had no legitimate need to stay at the hotel.

{¶17} Third, BCI DNA analyst Samuel Troyer testified on behalf of the state. The trial court recognized Troyer as an expert in the field of DNA analysis. Troyer testified that he analyzed the three plastic bags recovered from the hotel room's ceiling light. Troyer testified that he compared the DNA from the plastic bags to Wilson's DNA from the oral swabs. Troyer testified that there was a mixture of DNA — indicating the presence of more than one DNA profile — present on the plastic bag containing crack cocaine, and that Wilson's DNA was consistent with being in the mixture. Troyer testified that there was a one in 6,720,000 chance that an unrelated individual — other than Wilson — placed the DNA on that bag. Furthermore, Troyer testified regarding his DNA analysis of the exterior plastic bag and the plastic bag containing heroin. When asked whether Wilson's DNA was found on either the exterior plastic bag or the plastic bag containing heroin, Troyer stated "[Wilson] could not be excluded; however he was not included either, it was an inconclusive finding for those two items." Troyer explained that "there was too little DNA present on those items to really draw a conclusion." Troyer testified that it could not be determined how or when

Wilson's DNA was deposited on the plastic bags, but that it was more likely that the DNA was directly deposited — rather than deposited indirectly.

{¶18} Wilson further disputes the means by which his DNA became present on the plastic bags. In support of his argument, Wilson claims that: (1) DNA is easily transferrable, (2) it is likely that he did not handle the plastic bags at all, and a more likely scenario is that his DNA was on the plastic bags because he shook hands with another occupant who subsequently handled the plastic bags, and (3) there was no testimony regarding the other contributor found in the complex DNA mixture on the plastic bag containing crack cocaine.

{¶19} Furthermore, Wilson makes several allegations regarding the officers' improper handling of evidence. Wilson claims that there was no testimony regarding police protocol in removing the evidence from the hotel room and transporting it to the BCI. Wilson contends that: (1) the state must "be able to show the chain of custody," and (2) the state "can't show that the DNA wasn't contaminated."

{¶20} In *State v. Wharton*, 4th Dist. Ross No. 09CA3132, 2010-Ohio-4775, ¶ 11, the court addressed the possession element and touch DNA. During a traffic stop, police recovered three plastic baggies containing crack cocaine from the vehicle. A forensic scientist testified that each bag had a mixed DNA profile from more than one individual. *Id*. at ¶ 14. The defendant could not be excluded as a contributor to the mixed DNA profiles found on each of the baggies. *Id*. The expert also testified that for one of the

three baggies, there was a one in 23,580,000 chance that an unrelated individual — other than the defendant — contributed to the DNA profile found on that bag. *Id.* The court found that the "testimony on touch DNA bolsters a finding that [defendant] actually possessed the drugs in the console." *Id.* at ¶ 30.

{¶21} Generally, "the state [is] not required to prove a perfect, unbroken chain of custody." *State v. Keene*, 81 Ohio St.3d 646, 662, 693 N.E.2d 246 (1998). "'[T]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur.'" *State v. Sims*, 8th Dist. Cuyahoga No. 89261, 2007-Ohio-6821, ¶ 14, quoting *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987).

{¶22} In the instant matter, Detective Funk testified that after discovering the drugs in the ceiling light and taking photographs of the hotel room and the drugs, "the items were secured into evidence and eventually transported to the Bureau of Criminal Investigation." Furthermore, Troyer testified that he could not speak for the police regarding how the evidence was collected and transferred to the BCI. However, Troyer testified that he is confident in the accuracy of his report, and that "[Wilson's] DNA wouldn't just appear on the item because of the way that a police officer handled it." Troyer also testified about his familiarity with "secondary DNA" or "transfer DNA." Troyer testified that while it is possible that one of the other individuals in the hotel room transferred Wilson's DNA onto the plastic bag, "I would say it's more likely to leave

DNA behind by directly handling something than through transfer." Troyer testified that "directly handling an item is the most likely way to leave touch DNA." Wilson points to no evidence suggesting that the plastic bags were otherwise improperly handled.

{¶23} Wilson repeatedly argues that at least five other occupants had been present in the hotel room, and that many — if not all — of them had "a history of drug involvement." Detective Funk testified that when the police submitted the evidence to the BCI, "all of the individuals who were involved were listed" in the report, and that police requested "chemical, fingerprint, [and] DNA analysis." However, while there was DNA evidence connecting Wilson to the plastic bags, there was no other evidence connecting the other occupants to the plastic bags.

{¶24} Furthermore, two or more persons may have joint constructive possession of the same object. *Wharton*, 4th Dist. Ross No. 09FA3132, 2010-Ohio-4775; *see State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist.1993). Therefore, the fact that other individuals were present in the hotel room is not dispositive of whether Wilson had constructive possession of the drugs.

{¶25} In *Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787, the Ohio Supreme Court held that owning or leasing a property where contraband is found is insufficient by itself to establish possession — particularly when there are other co-tenants. The *Haynes* defendant was absent at the time of the search, and had not occupied the premises for a week prior to the search — the only evidence connecting the defendant to the drugs was

that he was the lessee of the premises. *Id.* This court found *Chandler* to be distinguishable from *Haynes*. *State v. Chandler*, 8th Dist. Cuyahoga Nos. 93664 and 93665, 2011-Ohio-590, ¶ 60.

**{¶26}** In *Chandler*, the state presented evidence that although the defendant did not lease the apartment, he lived there with his girlfriend-lessee. Furthermore, "although there were several other men found in the apartment when the search was executed, there was no other evidence connecting them to the apartment or the drugs found on the porch, as there was connecting [defendant] to the apartment and drugs." *Id.* at ¶ 61.

**{¶27}** In *State v. Adams*, there were 11 other people present with defendant in the home when police executed the search warrant. *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶ 9. The defendant argued that he did not exercise exclusive control over the drugs. *Id.* at ¶ 40. The court noted that there was "nothing to point to any other individuals controlling or accessing the heroin." *Id.* Furthermore, the court emphasized that "regardless of whether other individuals may have access to the illegal items, this is not dispositive of whether Adams had constructive possession." *Id.*; *see* *State v. Jackson*, 11th Dist. Ashtabula No. 2002-A-0039, 2003-Ohio-5863, ¶ 31-37 (where other adults are living in a home with access to the area where drugs were discovered, a defendant can still be found in constructive possession of drugs).

**{¶28}** In the instant matter, the trial court stated:

there is no requirement that the drugs be in the sole or exclusive possession of Wilson at the time of the offense. All that is required for constructive possession is some measure of dominion or control over the drugs in question beyond mere access to them.

The Court finds that the defendant's DNA on the baggy of cocaine provides this measure of dominion or control over the drugs. The fact that there were others in the room in addition to the defendant does not mean that the defendant could not exercise dominion or control over the drugs.

**{¶29}** Based on the fact that the crack cocaine and the heroin were concealed in the same plastic bag — packaged together — the trial court reasonably inferred that Wilson also had access to, and control over, the heroin found in the ceiling light. Thus, the trial court inferred: (1) Wilson had control over the crack cocaine based on the presence of his DNA on the plastic bag, and (2) Wilson had access and control over the heroin based on the fact that the heroin was found adjacent to — and concealed in the same bag as — the crack cocaine.

**{¶30}** Wilson repeatedly argues and implies that Greene — another occupant that police found in the hotel room with Wilson — is a "much more logical suspect," and that there is a "strong likelihood" that Greene brought the drugs to the hotel room. In support of his argument, Wilson claims that: (1) police found plastic ziploc bags in Greene's backpack, and these bags were not tested for comparison against the plastic bags recovered from the ceiling light, and (2) Green, had "an extensive criminal record," including drug trafficking.

**{¶31}** Based on his experience with drug investigations, Detective Funk testified that the bags found in Greene's backpack appeared to be "new" and "clean," and that it did not appear as though any drugs had been in the plastic bags. Detective Funk testified that if the plastic bags appeared to contain any drugs, they would have been

tested.   Furthermore, Detective Funk testified that police did not receive any Combined DNA Index System ("CODIS") hits on Greene or any of the other occupants.   Detective Funk testified that police only received a CODIS lead on Wilson's DNA.

**{¶32}** Wilson argues that the mere presence of his DNA on the plastic bag does not show that he possessed the drugs.   However, Wilson's drug possession conviction is not based solely on the presence of his DNA on the plastic bags.   The state established constructive possession — beyond mere speculation — based on:   (1) Wilson's presence in the hotel room, (2) the sizeable amount of drugs found in the hotel room where Wilson had been present, and (3) the presence of Wilson's DNA on the plastic bags.   Together, these facts support a finding that although the drugs were not in Wilson's immediate possession, he was able to exercise control over them and he was conscious of the drugs' presence.

**{¶33}** Since we must view the evidence in a light most favorable to the prosecution, there was sufficient evidence to establish that Wilson was not only aware of the drugs in the hotel room, but also that he had dominion and control over them.   Thus, we find the state met its burden of production and presented sufficient evidence, if believed, to establish that Wilson had dominion and control over the drugs and therefore, constructively possessed them.

### 2. Trafficking

**{¶34}** Wilson argues that the state failed to prove the elements of trafficking beyond a reasonable doubt.   Specifically, Wilson argues that the mere presence of his DNA on the plastic bag does not show that he was trafficking the drugs.   Furthermore,

Wilson argues that he had no money in his possession, suggesting that he neither attempted to purchase nor sold any drugs at the hotel.

**{¶35}** R.C. 2925.03 defines trafficking in drugs:

No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

**{¶36}** Wilson's trafficking conviction was not based on "selling" drugs under R.C. 2925.03(A)(1) — the conviction was based on "preparing for shipment or distribution" under R.C. 2925.03(A)(2). The trial court found Detective Funk's testimony sufficient to support the drug trafficking conviction based on the element of preparation.

**{¶37}** Detective Funk testified that the amounts of drugs recovered by the police are relevant in determining whether the drugs are intended for personal use or for sale. Based on his training and experience, Detective Funk testified that finding one or two unit doses is consistent with personal use, whereas finding a lot more than one or two unit doses is consistent with trafficking.

**{¶38}** Detective Funk testified that police recovered a sizeable amount of drugs from the hotel room, including: (1) 2.27 grams of cocaine, and (2) 9.24 grams of heroin. Detective Funk testified that a single dose of crack cocaine would be approximately .1 grams, and that the 2.27 grams recovered would be approximately 22 to 23 unit doses. Furthermore, Detective Funk testified that a single dose of heroin could vary from .2 to .4 milligrams, and that the 9.24 grams recovered would be between 30 and 40 unit doses. Based on his training and experience, Detective Funk testified that the quantity of drugs recovered from the hotel room was indicative of drug trafficking. The presence of the scale in the hotel room also suggests trafficking, as opposed to personal use.

**{¶39}** Furthermore, Detective Funk testified that Wilson's drug trafficking charge was not based solely on the fact that his DNA was found on the plastic bag. Detective Funk testified that he also considered Wilson's presence in the hotel room where the drugs were hidden as a factor in the investigation. Thus, Wilson's drug trafficking conviction was supported by: (1) his presence in the hotel room where the drugs were hidden, (2) the presence of Wilson's DNA on the plastic bag containing the crack cocaine, (3) the sizeable amount of drugs recovered from the hotel room, which Detective Funk testified suggested drug trafficking, as opposed to personal use, and (4) the presence of the scale in the hotel room.

**{¶40}** Accordingly, we find that the state produced sufficient evidence to support Wilson's drug trafficking conviction. Viewing the evidence in a light most favorable to the state, a rational trier of fact could have found that the drugs were intended for sale.

**{¶41}** Wilson's first assignment of error is overruled.

### B. Manifest Weight

**{¶42}** In his second assignment of error, Wilson raises the same arguments that he presented in his first assignment of error, arguing that: (1) there is no evidence that he intended to buy or sell drugs at the hotel, (2) the evidence only establishes that he was present in the hotel room where the drugs were subsequently located, and (3) Greene brought the drugs to the hotel room and intended to sell them. Furthermore, Wilson reiterates the transferrable nature of DNA, and claims "it is as likely, if not more likely, that the DNA was transferred [rather than directly deposited] onto the contraband." Wilson's arguments ignore the state's evidence as outlined above — particularly Troyer's testimony regarding transfer DNA.

**{¶43}** In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion rather than production. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering a claim that a conviction is against the manifest weight of the

evidence, this court sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of conflicting testimony." *Thompkins* at 387. The weight-of-the-evidence standard "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387.

**{¶44}** This court reviews the entire record, weighs the evidence and all reasonable inferences, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of the witnesses is primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to make credibility determinations be

**{¶45}** cause this court cannot view the demeanor of a witness while testifying. Therefore, the trier of fact is in the best position to determine if the proffered testimony is credible. *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

**{¶46}** In the instant matter, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice by convicting Wilson of drug possession and trafficking. After reviewing Wilson's arguments, we are not persuaded that the evidence in this matter weighs heavily against conviction.

**{¶47}** Wilson argues that evidence proves that he was present in the hotel room with several other people, and that the mere presence of his DNA on the plastic bag does not show that he possessed or was trafficking the drugs. However, Wilson's convictions are not based solely on the presence of his DNA — the trial court found him guilty based on the totality of the circumstances. After considering the facts, evidence, and credibility of Detectives Funk and Lavinder and BCI analyst Samuel Troyer, the trial court found that Wilson constructively possessed the drugs in the hotel room, and that Wilson prepared the drugs for shipment or distribution.

**{¶48}** Furthermore, we are not persuaded by Wilson's arguments regarding the improper handling of evidence and possible evidence contamination by the police. "[C]hain [of custody] goes to the weight afforded the evidence, not its admissibility." *Blevins*, 36 Ohio App.3d at 150, 521 N.E.2d 1105; *see also State v. Barzacchini*, 96 Ohio App.3d 440, 457-458, 645 N.E.2d 137 (2d Dist.1994) ("even when a break in the chain of custody is uncovered, it goes to the credibility of the evidence and not to its admissibility").

**{¶49}** Detective Funk testified that police secured the drugs after locating them in the ceiling light and taking photographs. Furthermore, Troyer testified that he is confident in the accuracy of his report, and that "[Wilson's] DNA wouldn't just appear on the item because of the way that a police officer handled it." Wilson does not point to any evidence suggesting that the evidence was improperly collected, transported, or analyzed. Assuming, arguendo, that there was a break in the chain of custody, the trial court, as the trier of fact, was in the best position to weigh the evidence and make a credibility determination.

**{¶50}** The evidence does not weigh heavily against Wilson's convictions for drug possession or trafficking, and we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice.

**{¶51}** Wilson's second assignment of error is overruled.

### III. Conclusion

**{¶52}** We find that the above evidence, if believed, was sufficient to establish that Wilson constructively possessed the drugs and prepared the drugs for shipment or distribution. Furthermore, after reviewing the entire record, weighing all of the evidence and considering the credibility of witnesses, we find that this was not the exceptional case where the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 81.

{¶53} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
TIM McCORMACK, J., CONCUR