[Cite as *State v. Gavin*, 2022-Ohio-3027.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 21CA3956 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| RONALD E. GAVIN, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Brian C. Howe and Mark Godsey, Ohio Innocence Project, Cincinnati, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Assistant Scioto County Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Appellant, Ronald Gavin, appeals the judgment entered by the Scioto County Court of Common Pleas denying his postconviction application for DNA testing as well as his motion to allow his defense expert access to physical evidence in order to conduct independent testing. On appeal, Gavin raises two assignments of error contending 1) that the trial court erred by denying his application for DNA testing; and 2) that the trial court erred by denying his unopposed motion for access to evidence for testing at his own expense. For the

reasons that follow, we find merit to both of Gavin's assignments of error. Accordingly, the judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion, with instructions as set forth below.

FACTS

{¶2} Gavin is currently appealing from the trial court's denial of his application for postconviction DNA testing as well as his motion for defense expert access to evidence for testing at Gavin's own expense. This is the fifth time this matter has been before this Court. Just recently, we considered Gavin's fourth appeal, which was from the trial court's denial of his second motion for leave to file a motion for a new trial. *See State v. Gavin*, 4th Dist. Scioto No. 21CA3941, 2022-Ohio-1287 (hereinafter "*Gavin IV*"). Similar to *Gavin IV*, the present matter stems from Gavin's underlying convictions in 2013 for trafficking in heroin, possession of heroin, conspiracy to traffic in heroin, and tampering with evidence, which were directly appealed to this Court in *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996 (hereinafter "*Gavin I*").

{¶3} Gavin's underlying convictions occurred as a result of his arrest after detectives with the Scioto County Sheriff's Office, acting on a tip provided by a confidential informant named Manual Lofton, searched Gavin's girlfriend's vehicle and found 97.4 grams of heroin. *Gavin I* at ¶ 12-14. Although we noted in

the first direct appeal that Gavin had made claims that either police had planted

drugs in the car, or that individuals by the names of Marcell Woods and Helen

Johnson had set him up, we affirmed his convictions for trafficking, possession and

conspiracy to traffic. *Id.* at ¶ 15, 37. However, we reversed Gavin's conviction for

tampering with evidence. *Id.* at ¶ 41.

{¶4} Thereafter, in April of 2016, Gavin filed a petition for postconviction

relief. In support of his petition, Gavin "attached the affidavits of several persons

who claimed that Lofton and Woods had framed Gavin by planting the heroin in

the car that Gavin regularly drove." *State v. Gavin*, 4th Dist. Scioto No.

16CA3757, 2017-Ohio-134, ¶ 5 (hereinafter "*Gavin II*"). Further, in his petition

for postconviction relief, Gavin claimed that he "had informed his trial attorney

about his potential witnesses, but his attorney failed to call them to testify on his

behalf at trial." *Id.* The trial court ultimately denied Gavin's petition, which led to

a second appeal to this Court. On January 6, 2017, this Court affirmed the

judgment of the trial court denying the petition. *Gavin II*.

{¶5} Thereafter, on May 15, 2017, Gavin filed a pro se motion for leave to

file a motion for new trial, which was also denied by the trial court and appealed to

this Court. *State v. Gavin*, 2018-Ohio-536, 105 N.E.3d 373 (4th Dist. 2018)

(hereinafter "*Gavin III*"). The underlying factual history of this case was set forth

in both *Gavin III* and *Gavin IV* and we incorporate it here, verbatim, as follows:

The Scioto County Grand Jury returned an indictment charging Ronald E. Gavin and an accomplice with several drug-related charges. The case proceeded to a jury trial where several witnesses, including Manual Lofton and Marcell Woods, testified that Gavin sold heroin to people on numerous occasions during the summer of 2013. Gavin obtained the heroin from Chicago sources, including his cousin.

The jury convicted Gavin of multiple heroin-related offenses and in November 2013, the trial court sentenced him to prison. In [*Gavin I*] we reversed his conviction for tampering with evidence and remanded the cause to the trial court to vacate that conviction and sentence. But we affirmed his remaining convictions and rejected his contention that he had received ineffective assistance of counsel. On remand the trial court complied with our mandate.

In April 2016, Gavin filed a petition for postconviction relief claiming that he was denied the effective assistance of trial counsel and that his convictions were obtained through fraud on the court. He attached the affidavits of several persons who collectively claimed that: (1) Lofton and Woods had framed Gavin by planting the heroin in the car that Gavin regularly drove; (2) Gavin had informed his trial attorney about his potential witnesses; and (3) his attorney failed to call them to testify on his behalf at trial. But Gavin failed to indicate how he was unavoidably prevented from discovering any of this purported newly discovered evidence. The affidavits of the potential witnesses were executed in July, August, and October 2015, and in March and April 2016. In May 2016, the trial court denied the petition for postconviction relief without conducting an evidentiary hearing.

On appeal we held that Gavin did not establish that the trial court had jurisdiction to address the merits of his untimely petition. We reached this conclusion because he admitted that some of his evidence "may have been available to [him] at the time of trial," and he did "not explain how either he or his appellate counsel were unavoidably prevented from having access to the evidence attached to his petition at the time he filed his direct appeal or

when he could have filed a timely petition for postconviction relief." [*Gavin II* at ¶ 14-15]. We modified the judgment of the trial court to reflect the dismissal of the petition and affirmed the judgment of the trial court as modified. *Id.* at ¶ 16-17.

In May 2017, Gavin sought leave to file a motion for a new trial based primarily on newly discovered evidence; he attached a proposed motion for new trial and a request for an evidentiary hearing. He also attached four of the affidavits, executed in July, August, and October 2015, and in April 2016, that he had filed in support of his unsuccessful petition for postconviction relief. The trial court denied the motion without an evidentiary hearing after concluding that Gavin had not established how he was unavoidably delayed from filing his motion, his motion was untimely, and he had not submitted newly discovered evidence. Gavin has appealed the denial of his motion for leave.

(Emphasis deleted.) *Gavin IV* at ¶ 3, quoting *Gavin III at* ¶ 4-9.

{¶6} In his appeal from the trial court's denial of his first pro se motion for leave to file a motion for a new trial, Gavin argued that the trial court erred by denying him an evidentiary hearing on his motion for leave. *Id.* at ¶ 10. However, this Court rejected Gavin's arguments and affirmed the trial court's judgment denying the motion for leave. *Id.* at ¶ 19. Then, nearly three years later and with the assistance of the University of Cincinnati College of Law's Ohio Innocence Project, Gavin filed a second motion for leave to file a motion for new trial on November 12, 2020. In his motion for leave, Gavin referenced the prior pro se motion for leave that was denied, as well as the basis of that motion, which included affidavits from four individuals alleging that Gavin had been framed by Manual Lofton and Marcell Woods. However, in his second motion for leave

Gavin informed the court that a new witness named Ryan Starks had "come forward with a firsthand account linking the heroin to the State's main witness, Manual Lofton." Gavin claimed that Starks' affidavit provided "a detailed account of how he, Manual Lofton, and Marcell Woods packaged and planted the heroin in Gavin's girlfriend's vehicle, as part of a scheme to reduce Lofton's own pending sentence on drug trafficking charges." Although Gavin's second motion for leave to file a motion for new trial referenced the four individuals whose affidavits were attached in support of his prior petition for postconviction relief and prior motion for leave to file a motion for a new trial, Gavin's second motion for leave was primarily based upon the statements of the newly identified witness, Ryan Starks, who did not come forward until 2019.

{¶7} As set forth in *Gavin IV*:

Gavin's motion for leave included the affidavit of Starks, which was executed on May 6, 2019, and which essentially stated that Starks sold Lofton the heroin at issue and showed Lofton how to "cut" the heroin with lactose, compress it and shape it. The affidavit further stated that Starks and Lofton thereafter picked up Marcell Woods, and that Lofton gave Woods $3000.00, handed him the packaged heroin, and told him to "make sure he put it down the right way." Starks' affidavit further stated that Woods got out of the car and put the heroin inside the door of a dark colored Camaro, which Starks believed, at the time, belonged to Woods. The affidavit further stated that later that night Lofton informed Starks that Gavin had been arrested, that Lofton had paid Woods $3000.00 to put the drugs inside the car to set up Gavin, and that Lofton had threatened to tell police that Starks was involved if Starks said anything to anyone about it. Finally, Starks averred in his affidavit that while in prison, he

> saw Gavin for the first time six years "after he was framed." It was at this time that Starks provided this new information to Gavin, explaining that he couldn't resist telling him because his conscience had been bothering him over the years that an innocent man was in prison for a crime he didn't commit.

*Gavin IV* at ¶ 6.

{¶8} The State opposed Gavin's second motion for leave to file a motion for new trial, arguing that "defendant ha[d] not filed his motion within the timeliness of Criminal Rule 33, and ha[d] not shown how he was unavoidably delayed." (Emphasis deleted.) The trial court ultimately denied Gavin's motion for leave, reasoning that the motion had been untimely filed.

{¶9} Gavin thereafter appealed the trial court's denial of his second motion for leave to file a motion for new trial. In his fourth appeal to this Court, we found merit to the arguments raised and ultimately reversed the trial court's denial of his motion for leave to file a motion for new trial. *Gavin IV*, *supra*, at ¶ 32 (reversing the trial court's denial of the motion for leave as being untimely filed and remanding the matter for determination on the merits and further determination regarding whether a hearing is required). Thus, at the present time, the question of whether Gavin should be granted leave to file a motion for a new trial remains pending with the trial court on remand.

{¶10} However, while Gavin was litigating his right to file a motion for a new trial, he continued to litigate other issues in the trial court as well. For

instance, Gavin filed a public records request on October 11, 2016, seeking to determine the manner and method used by BCI to determine that the substance discovered in Thompson's car was heroin. He filed a motion for independent testing the same date, seeking a specimen of the substance in order to have it tested by an independent lab. The trial court denied his request and he appealed that ruling. This Court administratively dismissed the appeal on June 5, 2017, as being untimely filed.

{¶11} Thereafter, Gavin filed a renewed motion for independent testing and fingerprint analysis. The renewed motion appears to have stemmed from the discovery, through the public records request, that the "clear bag" containing the heroin at issue had been submitted to BCI along with the heroin when it was originally tested back in 2013. In his renewed motion, Gavin not only sought independent testing of the substance that BCI determined to be heroin, but he also sought fingerprint analysis "of the package of the alleged drug substance." The State opposed the renewed motion for independent testing and fingerprint analysis and the trial court denied the renewed motion on August 4, 2017.[1]

---

[1] In *Gavin III*, which was issued on February 2, 2018, and which primarily dealt with the denial of Gavin's first pro se motion for leave to file a motion for a new trial, we noted that although Gavin also argued the trial court erred in denying his renewed motion for independent testing and fingerprint analysis, he did not include that judgment in his notice of appeal or file a separate notice of appeal from that judgment. *Gavin III* at ¶ 2. Thus, we determined the argument was not properly before us and that we could not address the merits. *Id.*

{¶12} Subsequently, on November 19, 2020, with the assistance of the Ohio Innocence Project, Gavin filed an application for DNA testing as well as a motion to allow his defense expert access to evidence for testing at defendant's expense. In his application for DNA testing and memorandum in support, Gavin argued that advances in DNA testing since 2013 now provided for "touch DNA" on items from crime scenes and that such testing would be able to definitively determine whether either Gavin or Lofton handled the bag of heroin. Gavin further argued that he was an eligible offender under Ohio's DNA testing law, that he met all of the required factors for obtaining testing, and that the testing results would be outcome determinative. The State opposed the application for DNA testing, conceding that Gavin was an eligible offender, but arguing that he failed to meet the additional required factors to obtain testing. The State further argued that DNA testing would not be outcome determinative. Gavin filed a reply brief countering the State's arguments regarding the application for DNA testing and noting that the State offered no argument as to why testing at his own expense should not be allowed. Gavin's reply brief also argued that the State did not oppose the separately-filed motion for defense expert access to evidence for testing at defendant's expense.

{¶13} On June 1, 2021, the trial court issued an order denying Gavin's application and his motion. The trial court stated in its order that no hearing was required, that Gavin was an eligible offender for purposes of DNA testing, but that

because the testing would not be outcome determinative, Gavin did not meet the

statutory criteria for testing.  Thus, the trial court denied both the application and

the motion.  It is from this order that Gavin now brings his timely appeal, setting

forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

I.      THE   TRIAL   COURT   ERRED   BY   DENYING
        APPELLANT'S APPLICATION FOR DNA TESTING.

II.     THE   TRIAL   COURT   ERRED   BY   DENYING
        APPELLANT'S UNOPPOSED MOTION FOR ACCESS
        TO EVIDENCE FOR TESTING AT DEFENDANT'S
        EXPENSE.

ASSIGNMENT OF ERROR I

{¶14} In his first assignment of error, Gavin contends that the trial court

erred by denying his application for postconviction DNA testing.  He argues that

the trial court erroneously based its outcome determinative analysis solely on

evidence as it existed at the time of the original trial, rather than "all available

admissible evidence" as required by R.C. 2953.74(D).  He also argues that modern

DNA testing can conclusively prove his guilt or innocence and that the trial court

erred by finding that testing would not be outcome determinative.  He further

argues that cases relied upon by the trial court in reaching its decision were

inapplicable to the facts of his case and that the trial court did not provide an

adequate explanation for the denial of his application.  The State responds by

arguing that DNA testing would not be outcome determinative in this matter and that in cases where DNA evidence was not the primary focus of the State's evidence or theory at trial, appellate courts have upheld denials of applications for DNA testing.

Postconviction DNA testing

{¶15} Postconviction DNA testing is governed by R.C. 2953.71 through 2953.84. An "eligible offender" for purposes of R.C. 2953.71 et seq. is defined as "an offender who is eligible under division (C) of section 2953.72 of the Revised Code to request DNA testing to be conducted under sections 2953.71 to 2953.81 of the Revised Code." R.C. 2953.71(F). R.C. 2953.72, which governs applications for postconviction testing, provides in section (C) as follows:

> (C)(1) An offender is eligible to request DNA testing to be conducted under sections 2953.71 to 2953.81 of the Revised Code only if all of the following apply:
>
> (a) The offense for which the offender claims to be an eligible offender is a felony, and the offender was convicted by a judge or jury of that offense.
>
> (b) One of the following applies:
>
> (i) The offender was sentenced to a prison term or sentence of death for the felony described in division (C)(1)(a) of this section, and the offender is in prison serving that prison term or under that sentence of death, has been paroled or is on probation regarding that felony, is under post-release control regarding that felony, or has been released from that prison term and is under a community control sanction regarding that felony.

(ii) The offender was not sentenced to a prison term or sentence of death for the felony described in division (C)(1)(a) of this section, but was sentenced to a community control sanction for that felony and is under that community control sanction.

(iii) The felony described in division (C)(1)(a) of this section was a sexually oriented offense or child-victim oriented offense, and the offender has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code relative to that felony.

(2) An offender is not an eligible offender under division (C)(1) of this section regarding any offense to which the offender pleaded guilty or no contest.

(3) An offender is not an eligible offender under division (C)(1) of this section regarding any offense if the offender dies prior to submitting an application for DNA testing related to that offense under section 2953.73 of the Revised Code.

{¶16} Here, the trial court found that Gavin was an eligible offender and the State concedes on appeal that Gavin is an eligible offender.

{¶17} R.C. 2953.73, which governs submissions of applications for postconviction testing, provides in section (A) as follows:

(A) An eligible offender who wishes to request DNA testing to be conducted under sections 2953.71 to 2953.81 of the Revised Code shall submit an application for DNA testing on a form prescribed by the attorney general for this purpose and shall submit the form to the court of common pleas that sentenced the offender for the offense for which the offender is an eligible offender and is requesting DNA testing.

R.C. 2953.73 further provides in section (D) as follows:

(D) If an eligible offender submits an application for DNA testing under division (A) of this section, the court shall make the

determination as to whether the application should be accepted or rejected. The court shall expedite its review of the application. The court shall make the determination in accordance with the criteria and procedures set forth in sections 2953.74 to 2953.81 of the Revised Code and, in making the determination, shall consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, shall consider all the files and records pertaining to the proceedings against the applicant, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript and all responses to the application filed under division (C) of this section by a prosecuting attorney or the attorney general, unless the application and the files and records show the applicant is not entitled to DNA testing, in which case the application may be denied. *The court is not required to conduct an evidentiary hearing* in conducting its review of, and in making its determination as to whether to accept or reject, the application. *Upon making its determination, the court shall enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code.* The court shall send a copy of the judgment and order to the eligible offender who filed it, the prosecuting attorney, and the attorney general.

(Emphasis added).  R.C. 2953.73(D)

{¶18} Thus, although the trial court is not required to hold an evidentiary hearing in making its determination whether to accept or reject an application, its judgment and order either accepting or rejecting the application must contain reasons for either the acceptance or rejection of the application.

{¶19} R.C. 2953.74, which governs "prior tests," provides in section (B) that a court may accept an eligible offender's application for postconviction DNA testing if one of the following applies:

> (1) The offender did not have a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been *outcome determinative* at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.
>
> (2) The offender had a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been *outcome determinative* at the trial stage in that case.

(Emphasis added).  R.C. 2953.74(B)(1)-(2).

{¶20} Here, R.C. 2953.74(B)(2) would be inapplicable because Gavin did not have a DNA test taken at the trial stage.  Thus, Gavin would have to meet the requirements contained in R.C. 2953.74(B)(1) in order for the trial court to accept

his application.  However, as will be discussed more fully below, the trial court did

not reach the question of whether Gavin met the requirements of R.C.

2953.74(B)(1) in rendering its decision.

{¶21} Additionally, if the requirements of either R.C. 2953.74(B)(1) or

(B)(2) are met, a court may only accept an eligible offender's application for

postconviction DNA testing if all of the following six requirements are satisfied:

> (1) The court determines pursuant to section 2953.75 of the
> Revised Code that biological material was collected from the
> crime scene or the victim of the offense for which the offender is
> an eligible offender and is requesting the DNA testing and that
> the parent sample of that biological material against which a
> sample from the offender can be compared still exists at that
> point in time.
>
> (2) The testing authority determines all of the following pursuant
> to section 2953.76 of the Revised Code regarding the parent
> sample of the biological material described in division (C)(1) of
> this section:
>
> (a) The parent sample of the biological material so collected
> contains scientifically sufficient material to extract a test sample.
>
> (b) The parent sample of the biological material so collected is
> not so minute or fragile as to risk destruction of the parent sample
> by the extraction described in division (C)(2)(a) of this section;
> provided that the court may determine in its discretion, on a case-
> by-case basis, that, even if the parent sample of the biological
> material so collected is so minute or fragile as to risk destruction
> of the parent sample by the extraction, the application should not
> be rejected solely on the basis of that risk.
>
> (c) The parent sample of the biological material so collected has
> not degraded or been contaminated to the extent that it has
> become scientifically unsuitable for testing, and the parent

sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.

(3) The court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4) The court determines that one or more of the defense theories asserted by the offender at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be *outcome determinative*.

(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be *outcome determinative* regarding that offender.

(6) The court determines pursuant to section 2953.76 of the Revised Code from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.

(Emphasis added).  R.C. 2953.74(C)(1)-(6)

{¶22} The phrase "outcome determinative" as contained in R.C.

2953.74(B)(1)-(2) and (C)(4)-(5) is defined in R.C. 2953.71(L) as follows:

(L) "Outcome determinative" means that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA

testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense or, if the offender was sentenced to death relative to that offense, would have found the offender guilty of the aggravating circumstance or circumstances the offender was found guilty of committing and that is or are the basis of that sentence of death.

{¶23} R.C. 2953.74(D) further provides that "the court, in determining whether the 'outcome determinative' criterion described in divisions (B)(1) and (2) of this section has been satisfied, shall consider all available admissible evidence related to the subject offender's case."

{¶24} Finally, R.C. 2953.75, which governs "comparison samples," provides in section (A) as follows:

> If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court shall require the prosecuting attorney to use reasonable diligence to determine whether biological material was collected from the crime scene or victim of the offense for which the offender is an eligible offender and is requesting the DNA testing against which a sample from the offender can be compared and whether the parent sample of that biological material still exists at that point in time. * * *

{¶25} Importantly, however, the Supreme Court of Ohio has held that:

> When an eligible inmate files an application for DNA testing pursuant to R.C. 2953.73, a trial court should exercise its discretion based upon the facts and circumstances presented in the case as to whether it will first determine whether the eligible inmate has demonstrated that the DNA testing would be

outcome-determinative, or whether it should order the prosecuting attorney to prepare and file a DNA evidence report pursuant to R.C. 2953.75.

*State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, paragraph two of the syllabus.

{¶26} As explained in *State v. Bunch*, if a trial court properly exercises its discretion to conclude that a DNA test would not be outcome determinative as required by R.C. 2953.74(B)(1)-(2) and (C)(4)-(C)(5), "the presence of other criteria is irrelevant." *State v. Bunch*, 7th Dist. Mahoning No. 14MA168, 2015-Ohio-4151, ¶ 97. In other words, the postconviction DNA testing statutes can be read together to conclude that if a trial court exercises its discretion to make an initial determination that an exclusion result would not be outcome determinative, the trial court "may reject the application without ordering the preparation of an inventory." *State v. Ridley*, 2020-Ohio-2779, 154 N.E.3d 462, ¶ 16 (3d Dist.). Here, the trial court exercised its discretion to make an initial threshold determination that postconviction DNA testing would not be outcome determinative even if an exclusion result were obtained. The trial court was not required to conduct an evidentiary hearing before denying the application, nor did it conduct a hearing. Further, the trial court's stated reasoning for denying the application appears to be based upon the "overwhelming evidence" introduced by

the State during the underlying trial, as well as this Court's prior affirmance of

Gavin's convictions.

Standard of Review

{¶27} In *State v. Hatton*, this Court observed that while some courts have

reviewed a trial court's decision regarding an application for DNA testing under a

de novo standard of review, other courts have employed an abuse of discretion

standard of review. *State v. Hatton*, 4th Dist. Pickaway No. 05CA38, 2006-Ohio-

5121, ¶ 25-26. In *Hatton*, we chose, "for the sake of argument," to apply the

"more stringent standard of review - de novo." *Id.* However, since that time, it has

become clear that the proper standard of review is abuse of discretion. Because

R.C. 2953.74(A) provides that a trial court has the discretion, on a case-by-case

basis, to accept or reject an eligible offender's postconviction application for DNA

testing, and in light of the Supreme Court of Ohio's holding in *State v. Buehler*,

*supra*, it is clear that we review the trial court's decision as to whether DNA

testing that yields an exclusion result would be outcome determinative for an abuse

of discretion.

{¶28} An "abuse of discretion" means that the court acted in an

" 'unreasonable, arbitrary, or unconscionable' " manner or employed " 'a view or

action that no conscientious judge could honestly have taken.' " *State v. Kirkland*,

140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.  *See also State v. Landrum,* 4th Dist. Ross No. 17CA3607, 2018-Ohio-1280, ¶ 10.  A trial court generally abuses its discretion when it fails to engage in a " 'sound reasoning process.' "  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Additionally, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court."  *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

Legal Analysis

{¶29} As we have already stated, the trial court found and the parties agree on appeal that Gavin is an eligible offender.  Further, as set forth above, the trial court exercised its discretion to make an initial threshold determination that postconviction DNA testing would not be outcome determinative even if an exclusion result were obtained and thus, the trial court did not reach the question of whether Gavin had satisfied the additional requirements for granting an application for postconviction DNA testing.  As such, the primary question on appeal is whether the trial court abused its discretion in concluding that DNA testing would

not be outcome determinative in this case even if the testing yielded an exclusion result.

{¶30} In making its determination that "the presence or absence of DNA evidence" would not be outcome determinative in this case, the trial court referred to the fact that Gavin's convictions had already been upheld on direct appeal, as well as the fact that in this Court's judgment affirming Gavin's convictions, we stated that the record contained overwhelming evidence of Gavin's guilt.[2]  In reaching its decision the trial court also referenced *State v. Sells*, a case from the Second District that upheld a trial court's denial of an application for postconviction DNA testing.  *State v. Sells*, 2d. Dist. Miami No. 2017-Ohio-987, 86 N.E.3d 891.  In *Sells*, the court found that DNA testing of a victim's pants and a baseball bat handle, even if it yielded evidence demonstrating the presence of someone else's DNA, would not be outcome determinative.  *Id.* at ¶ 10.  The court reasoned that at the most it would only establish that someone else had touched the bat and had contact with the victim and that such evidence would not reasonably exclude Sells as the perpetrator of the crime, nor would it negate the overwhelming evidence of Sells' own involvement in the crime.  *Id.* at ¶ 10.  The trial court also cited to *State v. Hatton*, 4th Dist. Pickaway No. 05CA38, 2006-Ohio-5121, without any explanation or discussion.

---

[2] We actually stated that there was "extensive, credible evidence" to support Gavin's convictions.

{¶31} On appeal, Gavin argues that his application for postconviction DNA testing "depends in large part on evidence outside the original trial record." He explains that since his original trial, multiple witnesses have come forward implicating Manual Lofton "in a scheme to plant the heroin in Ali Thompson's car." He argues that consideration of the "postconviction witnesses are critical" as they "bolster his longstanding claim of innocence," and they provide "concrete, testable details that can be definitively proven or disproven by DNA." Gavin argues that the trial court "appears to have ignored this evidence entirely," and instead "relied entirely on the summary of facts from Mr. Gavin's direct appeal." Gavin also argues that this Court's prior holding in *State v. Hatton, supra*, "applied the stricter pre-2006 outcome determinative standard in denying testing. Gavin contends that, in order to conduct a proper outcome determinative analysis, "the trial court should have examined all available admissible evidence, as required by R.C. 2953.74 (D), which Gavin argues would include evidence beyond what was solely available at the original trial. Gavin argues that "the Ohio Legislature has repeatedly loosened the outcome determinative requirement in response to inmates being denied DNA testing," and that while Ohio law previously required "a showing that, if DNA testing produced an exclusion result, then 'no reasonable factfinder would have found the inmate guilty[,]' " it now only requires a showing "that exculpatory DNA results would lead to a 'strong probability' of acquittal."

Gavin also argues that "Ohio law does not require an applicant to prove whether DNA testing is likely to produce exculpatory results," instead it "*presumes* that DNA testing will produce an exculpatory exclusion result."  Gavin further argues that " 'all available admissible evidence' includes the likelihood of matching an exclusion result to an alternative suspect."

{¶32} Importantly, Gavin contends that "[m]odern DNA testing can conclusively prove [his] guilt or innocence."  More specifically, he argues that modern DNA testing "can now detect and analyze even a few human skin cells left behind on the heroin packaging, and science can definitively answer whether either Gavin or Lofton ever handled the bag of heroin."  He concedes that if his DNA is found to be on the heroin packaging, his "guilt would be definitively confirmed."  However, he argues that if DNA from either Lofton, Starks or Woods is found on the packaging, those results would "definitively corroborate the Starks affidavit, and, at a minimum, provide a strong probability of a different outcome at trial."  We agree.

{¶33} In *State v. Ayers*, the court explained as follows:

In 2006, the General Assembly amended Ohio's DNA testing statutes. The amendments, among other things, made postconviction DNA testing more available to inmates and lowered the outcome-determinative standard for establishing entitlement to DNA testing. Under the prior version of R.C. 2953.71(L), "outcome determinative" meant that had "the results of DNA testing been presented at the trial * * * and been found relevant and admissible with respect to the felony offense for

which the inmate * * * is requesting the DNA testing * * * no reasonable factfinder would have found the inmate guilty of that offense."

Under the amended statute, " 'outcome determinative' means that had the results of DNA testing of the subject inmate been presented at the trial * * * and been found relevant and admissible with respect to the felony offense for which the inmate * * * is requesting the DNA testing * * *, *and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case * * *, there is a strong probability* that no reasonable factfinder would have found the inmate guilty of that offense."  (Emphasis added.) R.C. 2953.71(L).

The addition of the words "strong probability," among others, in the current version of R.C. 2953.71(L), in essence lowers the definition of "outcome determinative" from a showing of innocence beyond a reasonable doubt to one of clear and convincing evidence.

Although there is no legislative statement of intent in the amended R.C. 2953.71(L), there can be no doubt that the rise of DNA testing as an investigative tool prompted the General Assembly to lower the statutory standard for what constitutes "outcome determinative." The United States Department of Justice, Office of Justice Programs, has recognized that "DNA technology has become one of the most powerful tools to ensure that justice is done through our criminal justice system.  It helps identify offenders and eliminate innocent suspects.  Increasingly, DNA is also used to exonerate the wrongly convicted." *See* Ritter, Postconviction DNA Testing Is at Core of Major NIJ Initiatives (Mar.2009), National Institute of Justice Journal, No. 262.

*State v. Ayers*, 2009-Ohio-6096. 923 N.E.2d 654, ¶ 19-22.

{¶34} While a review of the trial court's judgment indicates that it recited

the proper standard when rendering its decision that DNA testing in this matter

would not be outcome determinative, it does appear that the trial court limited its analysis to the evidence introduced solely during trial and did not take into consideration any of the evidence introduced during the postconviction stage of the case.

{¶35} As set forth at length in the factual history section above, prior to filing the current motion for postconviction DNA testing Gavin filed several postconviction motions, including his initial petition for postconviction relief, followed by two motions for leave to file motions for new trial. Each of these petitions/motions were supported by affidavits of witnesses that came forward after trial claiming that Manual Lofton and Marcell Woods were involved in a setup of Gavin. Gavin alleged at trial that Marcell Woods was involved in the alleged setup, but had no evidence to support his allegations. Although the trial court denied each of these postconviction motions, they were all denied as being untimely filed and were not addressed on their merits. Further, as set forth above, this Court recently reversed and remanded the trial court's denial of Gavin's second motion for leave to file a motion for new trial, with instructions that the trial court consider the motion for leave on the merits. That motion for leave was primarily supported by the Starks affidavit, in which Starks claims to have first-hand knowledge that Manual Lofton and Marcell Woods planted drugs in the vehicle owned by Gavin's girlfriend.

{¶36} Further, while there was trial testimony demonstrating that Gavin had a history of selling drugs, which was admitted as "other acts" evidence, such testimony did not constitute evidence of drug possession or trafficking on the actual date in question. Although such evidence circumstantially supported Gavin's conviction, the only eyewitness account that Gavin actually possessed or sold drugs on the date in question came from Lofton himself. Thus, although there was circumstantial evidence that Gavin possessed the drugs at issue and intended to traffic them—by virtue of the fact that the drugs were found in his girlfriend's car and Gavin was apparently a known drug dealer—without Lofton's involvement in the investigation and both Lofton's and Woods' trial testimony, not much evidence remains. There is no way around the fact that Lofton was a key part of the investigation and trial and without his participation the evidence against Gavin was rather lacking. In fact, our reference to there being "extensive, credible evidence" supporting Gavin's conviction rested heavily on the evidence and testimony provided by both Lofton and Woods.

{¶37} We are mindful of the fact that upon his arrest Gavin told police that everything in the car was his, but the record further reflects that Gavin recanted that confession soon after his arrest and he has consistently claimed his innocence since that time. Thus, despite the fact that our prior decision referenced that there was extensive, credible evidence against Gavin at trial, now considering "all

available admissible evidence"—which includes several affidavits of witnesses that came forward after trial to implicate Manual Lofton and Marcell Woods—and if Gavin's allegations are true, the credibility of Lofton's and Woods' testimony would be severely affected. The trial court was obligated under R.C. 2953.74.(D) to take this new evidence into consideration when determining whether postconviction DNA testing would be outcome determinative. Further, taking such evidence into consideration leads to the conclusion that postconviction DNA testing which not only excludes Gavin's DNA, but also includes the DNA of another source, primarily Lofton and/or Woods, would result in a strong probability that no reasonable factfinder would have found Gavin guilty of the offense. *See State v. Ayers, supra*, at ¶ 34.

{¶38} In *Ayers,* the appellant sought postconviction DNA testing in order to prove that he was not the donor of the biological material tying the perpetrator to the crime, arguing that if the DNA profile of an unidentified person could be obtained from the testing, "then a strong inference would be raised that the profile was that of the true assailant." *Id.* at ¶ 32. In holding that the trial court erred in finding that postconviction DNA testing would not be outcome determinative, the *Ayers* court reasoned as follows:

> As previously noted, "outcome determinative" under the current statute not only establishes a lower standard for determining whether a reasonable fact-finder would have found guilt, but provides also for analyzing DNA test results "in the context of

and upon consideration of all available admissible evidence related to the inmate's case." R.C. 2953.71(L). This additional language seems to make clear that an exclusion result is not the only factor to consider when deciding whether DNA testing will be outcome determinative. In addition to the amendments in R.C. 2953.71(L), other amendments to the statutes recognize the advances in DNA testing and provide inmates the avenue to access the Combined DNA Index System ("CODIS").

*Ayers* at ¶ 34.

{¶39} In reaching its decision, the *Ayers* court relied upon *State v. Reynolds*, 2d Dist. Montgomery No. 23163, 2009-Ohio-5532, which reversed a trial court's decision denying an application for postconviction DNA testing. In *Reynolds*, the trial court's decision determining that DNA testing would not be outcome determinative was reversed, in part based upon the reasoning that "the absence of [Reynolds'] DNA and the simultaneous presence of a known felon's DNA from CODIS would create a strong probability of a different outcome * * *." *Reynolds* at ¶ 22. The *Ayers* court further explained that "[t]he amendments to the DNA statutes and the decision in *Reynolds* recognize the fact that in some cases, merely being excluded from a crime scene is insufficient to convince a court that the requested postconviction relief is warranted." *Ayers* at ¶ 37; *see also State v. Johnson*, 2014-Ohio-2646, 14 N.E.3d 482, ¶ 25-26 (8th Dist.) (discussing that DNA testing would be outcome determinative if it reveals the absence of Johnson's DNA and presence of a third person who had confessed to the crime, where evidence indicated there was only one perpetrator of the crime); *State v.*

*Emerick*, 2007-Ohio-1334, 868 N.E.2d 742, ¶ 25 (2d. Dist) (determining that DNA

analysis of the requested evidentiary items would clearly be outcome determinative

of the defendant's guilt if it demonstrates third party DNA where the State's theory

at trial was that there was a single perpetrator); *State v. Sells, supra*, at ¶ 10 (in

contrast, determining that even if DNA testing of the murder weapon and victim's

pants yielded a result establishing the presence of someone else's DNA, such result

would not be outcome determinative where there were two co-defendants involved

in addition to the other evidence introduced by the State).  Here, if Gavin's DNA is

found on the bag, he concedes his guilt is confirmed.  However, because the State's

theory at trial was that Gavin solely possessed and trafficked the drugs at issue,

without any involvement by Lofton, Woods or Stark, if DNA from any of these

individuals is found on the bag, such results would be outcome determinative.

{¶40} Finally, regarding the State's contention that the testing Gavin is

seeking (touch DNA analysis of a plastic baggie) is not the type of testing

contemplated by R.C. 2953.71 et seq., we must disagree.  The State contends that

"the bag of heroin does not fall under the definition of 'Biological Material'

pursuant to R.C. 2953.71(B)."  R.C. 2953.71(B) defines "biological material" as

"any product of a human body containing DNA."  The State argues that the

majority of cases involving DNA testing involve rape and murder, rather than drug

trafficking, and it questions "whether a drug trafficking case is even an appropriate

application of the statutory scheme for post-sentence DNA Testing inasmuch as a plastic bag containing Heroin does not fall under the definition of Biological Material." The State further contends that Gavin's argument that individuals touching the bag would have deposited a significant number of DNA-containing cells where the bag was knotted is "tenuous at best."

{¶41} Contrary to the State's argument, plastic bags containing drugs have been the subject of DNA testing in other Ohio cases, including one from this district. *See State v. Wharton*, 4th Dist. Ross No. 09CA3132, 2010-Ohio-4775, ¶ 13-14 (where "touch DNA" taken from the outside of three baggies found in a vehicle was compared to the defendant's DNA, which yielded a "mixed DNA profile" indicating that "more than one individual held [the] baggie in their hand and put their DNA cells on [it]"); *see also State v. Wilson*, 8th Dist. Cuyahoga No. 102231, 2015-Ohio-4979, ¶ 15-17 (DNA analysis conducted on three plastic bags demonstrated the existence of a mixture of DNA which indicated the presence of more than one DNA profile, defendant's DNA being part of the mixture). Additionally, the record reflects that Gavin's motion was supported by an expert affidavit stating that there is a reasonable expectation of obtaining informative DNA results should the plastic bag at issue be tested. Thus, we conclude that the State's argument is without merit.

{¶42} In light of the foregoing, we conclude the trial court abused its discretion in rejecting Gavin's application based upon its initial determination that postconviction DNA testing would not be outcome determinative and therefore we sustain Gavin's first assignment of error. After considering all available admissible evidence related to Gavin's case, we agree with Gavin's argument that if his DNA were to be absent from the plastic bag at issue, and if the DNA of either Starks, Lofton or Woods is present on the bag, there is a strong probability that no reasonable factfinder would have found Gavin guilty of the offenses at issue and thus, such results would be outcome determinative. As such, we conclude the trial court erred in denying Gavin's application on these grounds. Accordingly, the judgment of the trial court is reversed and this matter is remanded for further proceedings, with instructions that the trial court order the prosecutor to prepare and file a DNA evidence report pursuant to R.C. 2953.75 and then further determination of whether Gavin meets the remaining criteria for postconviction DNA testing contained in R.C. 2953.71 et seq.[3]

## ASSIGNMENT OF ERROR II

{¶43} In his second assignment of error, Gavin contends that the trial court erred and abused its discretion by denying his unopposed motion for access to

---

[3] We note that in its brief the State represents that it "does have in its custody and control a plastic bag containing Heroin which was potentially evidence in this matter and was not tested for DNA."

evidence for testing at his own expense.  Gavin argues that while R.C. 2953.71 et seq. governs the procedures for postconviction DNA testing at the State's expense, they do not govern independent testing at a defendant's own expense.  He further argues that R.C. 2953.84 provides that R.C. 2953.71-81 "do not limit or affect any other means by which an offender may obtain postconviction DNA testing." Gavin also argues that despite the State's failure to oppose the motion below, the trial court summarily denied it without discussion or analysis.  In response, the State contends that while it admittedly "did not file a specifically delineated and captioned Memorandum Contra or Reply to this specific Motion, the State has opposed every issue raised pertaining to this case otherwise, specifically DNA testing at this stage."  The State further argues that its opposition to this request was "implicit."  The State argues that it "agrees with the trial court's denial of Mr. Gavin's request for DNA testing at this stage regardless whether who pays for it[,]" because "any result of DNA testing on the evidence at issue would in no way be able to prove actual innocence."  Finally, the State argues that "a result reflecting no DNA evidence from Ronald Gavin on the plastic bag of Heroin does not prove anything particularly in light of the fact that the bag was located behind a stereo faceplate under the passenger seat, removed by law enforcement, impounded, transported to BCI, tested by BCI, then at some point returned to the Scioto County Prosecutor's office."

{¶44} Despite the State's argument, we conclude the trial court abused its discretion in denying Gavin's request for expert access for independent testing at his own expense.  Gavin points out that "actual innocence" is not the standard that must be met when seeking postconviction DNA testing.  Gavin also correctly points out that R.C. 2953.84 does not prohibit such a request.  Rather, R.C. 2953.84, which is entitled "Remedies not exclusive," states as follows:

> The provisions of sections R.C. 2953.71 to 2953.81 of the Revised Code by which an offender may obtain postconviction DNA testing are not the exclusive means by which an offender may obtain postconviction DNA testing, and the provisions of those sections do not limit or affect any other means by which an offender may obtain postconviction DNA testing.

{¶45} Moreover, the Second District Court of Appeals has determined that "[a] request to permit the defendant to conduct post-conviction DNA testing funded by a private source would not fall under R.C. 2953.71." *State v. Emerick*, 2d. Dist. Montgomery No. 24215, 2011-Ohio-5543, FN. 3.  More specifically, the *Emerick* court stated as follows, with respect to the Ohio Innocence Project's offer to pay for any additional DNA testing permitted by the court:

> R.C. 2953.71 specifically states that an "application" under the postconviction DNA statute means a request "for the state to do DNA testing on biological material."  A request to permit the defendant to conduct post-conviction DNA testing funded by a private source would not fall under R.C. 2953.71.
>
> Such a request is permitted by R.C. 2953.84, which was enacted in Senate Bill 262.  That statute provides: "The provisions of sections 2953.71 to 2953.82 of the Revised Code by which an

inmate may obtain postconviction DNA testing are not the exclusive means by which an inmate may obtain postconviction DNA testing, and the provisions of those sections do not limit or affect any other means by which an inmate may obtain postconviction DNA testing."

Provided that a sufficient parent sample is available and the chain of custody is maintained, we see no reason why a trial court would decline a request for post-conviction DNA testing by the defendant when conducted at the defendant's own or another private entity's expense. We emphasize that any request for DNA testing outside of the provisions of R.C. 2953.71 to 2953.82 would not require the State to provide a list of all existing biological materials, as required by those sections.

Although the Innocence Project expressed its intent to pay for additional DNA testing, Emerick has consistently asserted that he is entitled to DNA testing under the statutory criteria, not R.C. 2953.84. The trial court did not err in focusing on the statutory requirements for additional DNA testing. *See State v. Constant*, Lake App. No. 2008-L-100, 2009-Ohio-3936.

{¶46} In *Emerick*, the Ohio Innocence Project offered to pay for DNA testing. Here, Gavin has requested DNA testing at the state's expense under R.C. 2953.71 et seq. as well as private testing at his own expense. These are two separate, independent requests. As already noted above, the State represents that it has the plastic bag at issue in its custody and control. Assuming there is an adequate parent sample and chain of custody can be maintained, we see no plausible reason to deny Gavin's request for independent testing.

{¶47} Our reasoning is primarily based upon our disposition of Gavin's first assignment of error, which found that such testing would be outcome

determinative, as well as the fact that such testing would not be an economic burden to the state. Another court has reached the same decision. *See State v. Johnson*, 2014-Ohio-2646, 14 N.E.3d 482 (8th Dist.) (noting that because the defendant was bearing the cost of the DNA testing through non-public means, the testing would not financially burden the state); *see also* 2005 Ohio Atty.Gen.Ops. No. 2005-009, at paragraph three of the syllabus ("R.C. 2953.71-.81 and R.C. 2953.82 are not the exclusive means by which an inmate may obtain post-conviction DNA testing"). Although Ohio Attorney General Opinions are not binding authority upon this Court, we may nevertheless accept them as persuasive authority. *State v. Wycuff*, 4th Dist. Pickaway No. 19CA28, 2020-Ohio-5320, ¶ 8.

{¶48} In light of the foregoing, we sustain Gavin's second assignment of error and reverse the trial court's summary denial of his motion for expert access for purposes of independent testing at his own expense. We conclude the trial court abused its discretion in summarily denying the motion, which should have been granted provided there is a sufficient parent sample and the chain of custody can be maintained. *Emerick, supra*, at FN. 3. Accordingly, the judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion, as set forth in our disposition of Gavin's first assignment of error, as well as for further proceedings to implement independent testing under the parameters set forth herein.

**JUDGMENT REVERSED.**


## JUDGMENT ENTRY


It is ordered that the JUDGMENT BE REVERSED and costs be assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**